**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

**CASE NO.**

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

v.

**RICARDO BONILLA ROJAS AND**
**SHADAI YIRE, INC.,**

**Defendants.**

_______________________________________/

# COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission alleges:

## I. INTRODUCTION

1. The Commission brings this action to enjoin Defendants Ricardo Bonilla Rojas and Shadai Yire, Inc. from violating the registration and anti-fraud provisions of the federal securities laws.

2. From no later than August 2005 until at least February 2009, Rojas, directly and through his company, Shadai Yire, engaged in an offering fraud that, by September 2005 devolved into a Ponzi scheme. All told, Rojas and Shadai raised more than $7 million from approximately 200 investors in Puerto Rico and the United States.

3. Rojas solicited investments primarily through personal discussions with individuals and presentations to groups, including Evangelical Christian groups and factory workers, where he promised to pay investors 15% to 50% annual returns. Rojas told prospective investors this was a risk-free investment in M & R International Group, Corp., a Shadai Yire subsidiary, which would invest in commodities contracts.

4. Rojas touted a purported long history of successful trading in commodities and gave investors his guarantee their principal contributions were secure. He made numerous misrepresentations and omissions to investors, foremost among them failing to disclose that he did not invest any of the contributions. To hide this from investors, Rojas repaid earlier investors with money collected from new investors in typical Ponzi scheme fashion.

5. Rojas also omitted disclosing that he misappropriated at least $700,000 of the investors' contributions to support his lifestyle.

6. Through this fraudulent conduct, Rojas and Shadai Yire violated Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§77e(a), (c), and q(a)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. §240.10b-5]. Rojas also violated Section 15(a)(1) of the Exchange Act [15 U.S.C. §78o(a)(1)].

7. The Commission asks the Court to enter: (1) permanent injunctions restraining and enjoining Rojas and Shadai Yire from violating the federal securities laws; (2) orders directing Rojas and Shadai Yire to disgorge all ill-gotten gains, with prejudgment interest; (3) orders directing Rojas and Shadai Yire to pay civil penalties; and (4) orders directing Rojas and Shadai Yire to submit sworn accountings of all profits or proceeds they received as a result of the courses of conduct alleged in this Complaint.

## II. DEFENDANTS AND RELATED ENTITY

### A. Defendants

8. Rojas, 53, resides in Arecibo, Puerto Rico. He has been the president and controlling principal of Shadai Yire since April 2001. Rojas has never been registered with the Commission in any capacity.

9. Shadai Yire is a Puerto Rican company Rojas formed in April 2001 with its principal place of business in Arecibo. Shadai Yire is purportedly an international enterprise in the business of global private investments. Shadai has never registered an offering of securities under the Securities Act or a class of securities under the Exchange Act, and has never registered with the Commission in any capacity.

### B. Related Entity

10. M&R is a Puerto Rican company and subsidiary of Shadai Yire Rojas formed in October 2004 which purports to be in the business of investing in the commodities markets.

## III. JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to Sections 20(b), (d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), t(d), and v(a)]; and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

12. The Court has personal jurisdiction over Rojas and Shadai Yire, and venue is proper in the District of Puerto Rico, because many of the Defendants' acts and transactions constituting violations of the Securities Act and the Exchange Act occurred in the District of Puerto Rico. More specifically, Shadai Yire's principal place of business was in Puerto Rico, Rojas solicited investors from Puerto Rico, and Rojas resides in this District.

13. In connection with the conduct alleged in this Complaint, Rojas and Shadai Yire, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## IV. THE DEFENDANTS' FRAUDULENT INVESTMENT SCHEME

### A. The Defendants' Offer And Sale of Securities

14. From no later than August 2005 until at least February 2009, Rojas, directly and through Shadai Yire, offered and sold securities in the form of investment contracts in Shadai Yire.

15. No registration statement has been filed or was in effect with the Commission in connection with the securities offered by Shadai Yire, nor is Shadai Yire entitled to any registration exemption.

16. Rojas actively solicited investors and marketed the investment primarily through personal discussions with individuals, in person and during telephone conversations, and through presentations to groups, including Evangelical Christian groups and factory workers in Puerto Rico.

17. Beginning no later than September 2005 until at least December 2007, Rojas also hired sales agents to solicit investors. Rojas used at least two entities and one individual as sales agents, and paid these sales agents commissions based on a percentage of the investor funds they raised.

18. Rojas and his sales agents told prospective investors Shadai Yire would invest their contributions in Shadai Yire and M&R, a company that invested in commodity contracts.

19. Rojas and his sales agents also told investors he would generate profits based on a long history of successful trading in the commodities markets. Investors had no involvement in making investment or trading decisions, or in the day-to-day operations of Shadai Yire or M&R.

20. Rojas and his sales agents pitched the investment opportunity to individuals as a risk-free way to earn high returns in a short period of time.

21. Rojas and his sales agents provided investors virtually no information about Shadai Yire or M&R, but promised investors their principal would be secure. Rojas also promised investors 15% to 50% returns after investment cycles of 60 days to 13 months.

22. Rojas also made these promises to investors in an agreement entitled "Joint Venture Contract," which Rojas entered into on behalf of Shadai Yire with investors. According to this agreement, Rojas and Shadai Yire promised investors Shadai Yire would invest their contributions, investors would earn returns of up to 50%, and investors' principal contributions were "100% guaranteed."

23. Shadai Yire also distributed a "Partnership Proposal" to prospective investors. This document touted Shadi Yire's purported expertise in commodities and promised investors their principal contributions were guaranteed.

24. From no later than August 2005 until at least February 2009, Rojas collected investors' contributions via checks and wire transfers and pooled these funds by depositing them into Shadai Yire and M&R's bank accounts, which Rojas controlled.

25. In September 2005, Rojas began using investors' funds to pay earlier investors their purported returns. From September 2005 until December 2008, Rojas used at least $4 million of investors' funds to pay earlier investors their contributions in Ponzi scheme fashion.

26. No later than in October 2005, Rojas began misappropriating investors' funds for his own use. From that time until January 2009, Rojas misappropriated at least $700,000 of investors' funds.

27. Rojas and Shadai Yire raised more than $7 million from approximately 200 investors in Puerto Rico and the United States, including North Carolina, Florida, and New York. Some of these investors were unaccredited and unsophisticated.

**B. Material Misrepresentations And Omissions To Investors And The Misappropriation Of Investors' Funds**

28. In connection with soliciting investments in Shadai Yire and M&R, Rojas and Shadai Yire made numerous material misrepresentations and omissions regarding, among other things: (i) the rates of return; (ii) the safety of the principal; (iii) sources of returns; (iv) investor account balances; and (v) the use of investor funds.

**i. Rojas And Shadai Yire Lured Investors With False Promises Of Guaranteed Rates Of Return**

29. To lure investors, Rojas promised to pay them up to 15% to 50% returns after investment cycles of 60 days to 13 months. Rojas had no reasonable basis for making these promises because he never invested any of the investors' contributions.

30. By September 2005, Rojas was using investors' funds to pay earlier investors their purported returns. By October 2005, Rojas was misappropriating investors' funds to support his lifestyle. Nonetheless, Rojas continued promising investors returns of up to 50%.

31. Rojas promised these returns orally and, in some instances, in writing.

32. For example, in approximately April 2008, Rojas visited a potential investor at her home in Costa Norte, Puerto Rico. Rojas promised the investor a 40% return on a three-month investment, and the investor contributed $30,000.

33. Rojas lacked any reasonable basis for making this promise. He had not invested any investors' contributions. He had already misappropriated approximately $650,000 in investors' contributions and had used approximately $3.6 million to pay earlier investors their purported returns.

34. Rojas also promised investors rates of return in written agreements. For example, on July 31, 2007, Rojas, on behalf of Shadai Yire, entered into a Joint Venture Contract with a

pastor who resides in North Carolina. In this document, Rojas promised the pastor returns of up to 30%. However, Rojas was not investing any investor contributions when he executed this document. Instead, he was only misappropriating funds and using the remainder to pay earlier investors their purported returns or pay commissions to his sales agents.

**ii. Rojas And Shadai Yire Misrepresented The Safety Of The Investment**

35. From no later than January 16, 2006 until at least February 29, 2008, Rojas and Shadai Yire lured investors by promising them their principal contributions in Shadai Yire and M&R would be secure.

36. When Rojas and Shadai Yire began making these promises in approximately August 2005, Rojas was already using investor contributions to pay earlier investors their purported returns. By October 2005, Rojas was misappropriating investor contributions to support his lifestyle.

37. Nonetheless, Rojas and Shadai Yire continued to promise investors their contributions were secure. For example, on July 31, 2007, Rojas, on behalf of Shadai Yire, executed a Joint Venture Contract with an investor in which Shadai Yire promised the investor his principal contribution was "100% Guaranteed." The investor invested $10,000.

38. By April 2008, Rojas had misappropriated approximately $650,000 of the investor contribution for his personal use, and had used approximately $3.6 million of investors' contributions to pay earlier investors their purported returns.

39. Nonetheless, Rojas and Shadai Yire continued to promise investors their contributions were secure. For example, in April 2008, Rojas, on behalf of Shadai Yire, lured an investor with oral assurances that, among other things, he would receive his principal contribution back in three months. In addition, Rojas, on behalf of Shadai Yire, executed a Joint

Venture Contract with the investor in which Shadai Yire promised the investor his principal contribution was "100% Guaranteed." The investor invested $30,000.

### iii. Rojas Misrepresented The Source Of Investors' Purported Returns

40. Rojas failed to disclose that he never invested any of the investors' contributions and instead misappropriated them for his own use, used them to pay his sales agents, and used them to pay earlier investors their purported returns.

41. From no later than September 2005 until December 2008, Rojas paid purported investment returns of at least $4 million to investors from other investors' contributions in typical Ponzi scheme fashion. Rojas falsely told investors this money was their profits from the investment with Shadai Yire and its subsidiary, M&R.

### iv. To Hide Investor Losses, Rojas Sent Investors False Account Statements

42. From no later than January 16, 2006 until at least February 29, 2008, Rojas, on behalf of Shadi Yire, sent investors false account statements. These statements contained account balances showing investors' principal contributions and the accumulated returns he had promised. However, there were no investment returns when Rojas sent these account balances because he had failed to invest any of the investors' contributions. Rather than any returns, there was only the loss of funds due to Rojas' misappropriation and Ponzi scheme payments.

43. For example, Shadai Yire sent an investor an account statement for the period August 31, 2007 to October 31, 2007, showing the investor had gained $3,225 on his $10,000 investment. In truth, there were only losses because Rojas and Shadai Yire failed to invest any investor contributions.

**v. Rojas Misrepresented How He Would Use Investors' Funds**

44. Rojas told investors he would invest their contributions in M&R, which would purchase commodities contracts.

45. In reality, Rojas did not invest any investor funds. Rojas used approximately $700,000 of investors' contributions to support his lifestyle and approximately $4 million to pay purported investment returns to investors.

46. By October 2008, there were virtually no funds left in Shadai Yire bank accounts because Rojas misappropriated investor contributions, fraudulently paid investor contributions as purported investment returns to conceal his scheme, and spent the remainder of investors' money to pay his team of sales agents to solicit new investors.

## V. CLAIMS FOR RELIEF

### COUNT I

**Sale of Unregistered Securities in Violation of Sections 5(a) and 5(c) of the Securities Act Against Rojas And Shadai Yire**

47. The Commission repeats and realleges paragraphs 2-4, 8-10, and 14-27 of this Complaint as if fully restated herein.

48. No registration statement was filed or in effect with the Commission pursuant to the Securities Act and no exemption from registration exists with respect to the securities and transactions described in this Complaint.

49. From no later than August 2005 until at least February 2009, Rojas and Shadai Yire, directly or indirectly: (a) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise; (b) carried securities or caused such securities to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for

the purpose of sale or delivery after sale; and (c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise, without a registration statement having been filed or being in effect with the Commission as to such securities.

50. By reason of the foregoing, the Defendants directly or indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II

### Fraud In Violation of Section 10(b) and Rule 10b-5 of the Exchange Act Against Rojas And Shadai Yire

51. The Commission repeats and realleges paragraphs 1 through 46 of this Complaint as if fully restated herein.

52. From no later than August 2005 until February 2009, Rojas and Shadai Yire, directly or indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and courses of business which have operated, are now operating and will operate as a fraud upon the purchasers of such securities.

53. By reason of the foregoing, the Defendants directly or indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule l0b-5 [17 C.F.R. § 240.10b-5].

## COUNT III

**Fraud in the Offer or Sale of Securities in Violation of Section 17(a)(1) of the Securities Act Against Rojas And Shadai Yire**

54. The Commission repeats and realleges paragraphs 1 through 46 of this Complaint as if fully restated herein.

55. From no later than August 2005 until February 2009, Rojas and Shadai Yire, directly or indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

56. By reason of the foregoing, Rojas and Shadai directly or indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(l) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT IV

**Fraud in the Offer or Sale of Securities in Violation of Sections 17(a)(2) and (3) of the Securities Act Against Rojas And Shadai Yire**

57. The Commission repeats and realleges paragraphs 1 through 46 of this Complaint as if fully restated herein.

58. From no later than August 2005 until February 2009, Rojas and Shadai Yire, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce, or of the mails: (a) obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (b) engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

59. By reason of the foregoing, Rojas and Shadai directly or indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (3)].

**COUNT V**

**Unregistered Broker-Dealer Conduct in Violation of Section 15(a)(1) of the Exchange Act**

60. The Commission repeats and realleges paragraphs 1 through 10 and 14 through 27 of this Complaint as if fully restated herein.

61. From no later than September 2005 until at least December 2007, Rojas, directly and indirectly by the use of the means and instrumentalities of interstate commerce, while acting as a broker or dealer engaged in the business of effecting transactions in securities for the accounts of others, effected transactions in securities, or induced or attempted to induce the purchase and sale of securities, without registering as a broker-dealer in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b).

62. By reason of the foregoing, Rojas, directly or indirectly, violated and, unless enjoined, will continue to violate Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## VI. RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

**I.**

**Declaratory Relief**

Declare, determine, and find that the Defendants have committed the violations of the federal securities laws alleged in this Complaint.

## II.

## Permanent Injunctive Relief

Issue Permanent Injunctions, enjoining the Defendants, their agents, servants, employees, attorneys, representatives, and all persons in active concert or participation with them, and each of them, from directly or indirectly violating: (1) Sections 5(a) and 5(c) of the Securities Act; (2) Section 17(a)(1) of the Securities Act; (3) Sections 17(a)(2) and 17(a)(3) of the Securities Act; and (4) Section 10(b) and Rule 10b-5 of the Exchange Act; and (5) as to Rojas, Section 15(a)(1) of the Exchange Act.

## III.

## Disgorgement

Issue an Order directing the Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

## IV.

## Penalties

Issue an Order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act, [15 U.S.C. §78(d)(3)].

## V.

## Further Relief

Grant such other and further relief as may be necessary and appropriate.

VI.

**Retention of Jurisdiction**

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

August 21, 2012 By: ______________________

Amie Riggle Berlin, Esq.
Senior Trial Counsel
Puerto Rico Government Attorney No. G01511
Direct Dial: (305) 982-6322
E-mail: berlina@sec.gov

*Attorney for Plaintiff*
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154